PETER J. FLINN, RESPONDENT, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Railroad company — right of, to run trains on any of its tracks, although the track used is immediately adjoining a dwelling-house and its use is peculiarly prejudicial thereto.*

The owner of a lot, one end of which abutted upon land used by a railroad company for its tracks, brought an action against the company, alleging that he had a house on the said lot; that the railroad, after it had been in operation many years, had constructed two additional tracks upon its land, which brought its tracks very near to the plaintiff's house; that sparks and smoke were thrown into the windows, and that the house was finally set on fire and so much injured as to be practically destroyed ; that the defendant, the railroad company, drew heavy freight trains up this part of its road where the grade was very steep, and

that such trains were frequently "stalled," and that in the effort to draw such heavy trains great showers of sparks were thrown out; and that there was an unlawful interference with his rights in laying the additional tracks near his house.

*Held,* that whether the railroad company should run its freight trains on one track or on another, or on the track nearest to plaintiff's house, was a question to be decided by the company itself, and that the jury had no right to say that the use of one or the other track was a negligent or improper use thereof.

That the company might lawfully lay its tracks on any part of the lands owned by it, and that, in the absence of further proof of negligence on its part, it was not liable for incidental damages arising from the location of its tracks.

That the fact that the defendant ran long and heavy freight trains on the track nearest plaintiff's house, and that more than one engine was sometimes required for running those trains, was no evidence of negligence on its part, nor was the fact that at times trains were "stalled" thereon.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of Albany on the 11th day of November, 1889; and also from an order of the court denying a motion for a new trial, entered in said clerk's office on the 18th day of October, 1889, after a trial before the court and a jury at the Albany Circuit, at which a verdict was rendered in favor of the plaintiff for the sum of $1,600.

*Hale & Bulkley,* for the appellant.

*E. Countryman,* for the respondent.

LEARNED, P. J. :

The rear end of plaintiff's lot abuts on lands used by the defendant for its tracks. This land was purchased or procured by the city of Albany, for the purpose of enabling the defendant (or defendant's predecessor) to build thereon its tracks; and it was leased by the city to the defendant (or its predecessor) for that purpose.

It is still so held and used, defendant having a perpetual lease. Although thus leased and used, a part of the land is generally called Railroad avenue. But this is a mere local designation. It is not a street or a highway; but it is only, as above stated, property leased by the city to the defendant (or defendant's predecessor), in accordance with certain statutes for its tracks. The plaintiff's deed bounds his land upon the land conveyed to the defendant's predecessor for the track of their road.

When plaintiff bought his land in 1867 there were but two tracks. Two additional tracks were laid in 1874. There were houses which fronted on this so-called Railroad avenue, and the occupants passed up and down on this land to get to Van Woert street and Broadway. The plaintiff had a house on the end of his lot abutting this so-called Railroad avenue. His claim is, that since the construction of the two additional tracks, which brought the tracks near to his said house, sparks and smoke have been thrown into the windows; the house has been set on fire, and finally that the house was so much injured in 1884 as to be practically destroyed.

The plaintiff claims that the defendant drew heavy freight trains up this part of the road where the grade is very steep and that such trains were frequently "stalled," and that in the effort to draw such heavy trains great showers of sparks were thrown out to his injury. He also claims that the defendant was negligent in not using the best spark-arrester. It will be seen from the pleadings, the case and the briefs of counsel that the plaintiff did not rest his ground of action simply on the usual ground in such cases, that the defendant was negligent in using imperfect engines. He claimed also that there was an unlawful interference with his rights in laying the additional tracks near his house. Hence is apparent the appropriateness of certain requests made by the defendant to the court.

The defendant's counsel asked the court to charge that the fact that the defendant used the track nearest the plaintiff's building for freight trains, instead of using some other track for that purpose, is no evidence of neglect. The court declined and said that they had a right to use their property as they pleased, and it is for the jury to say whether that was an improper or negligent use of it.

There is nothing in this case to show that defendant was not authorized to lay additional tracks. The fact that when the property was first acquired by the city for the railroad company the intention of the company was to lay a double track is not the least evidence that the company might not lay four tracks if it chose. And certainly when business increased it was the right, if not the duty, of the company to increase its facilities. Whether the company should run its freight trains on one track or on another was for it to decide. Running such trains on the track nearest to plaintiff's house was no evidence of negligence.

The jury had no right to say that that was a negligent or improper use of the track. The land belonged to the company for the purpose of laying its tracks, and it might lawfully lay its tracks on any part. It had the right by statute to run its engines on its tracks, and to lay its tracks on the land it had lawfully acquired. It is not liable for incidental damages unless it is shown that such damages are occasioned by its negligence. We cannot see how negligence can be predicated, in respect to an abutting or adjacent owner of land from the fact that the railroad company placed its track on one part or on another of its own land, acquired for the purpose of laying its tracks.

Cases are cited by the plaintiff's counsel where heaps of combustible material have been placed or allowed to remain on the land of the railroad company, and have caught fire and caused injury to adjacent property. But such cases are not analogous to this. It is no necessary part of defendant's business to leave heaps of combustible material on its land. But it is a necessary part of its business to lay tracks and to run cars over those tracks. The land in question and the whole width of the land were procured for that business and may lawfully be used therefor.

To say that negligence could be imputed to the company for laying its tracks near to the boundary line of its land would deprive it of the lawful use for which the lease was acquired.

Again, the defendant's counsel asked the court to charge that the fact that the defendant ran long and heavy trains on the track nearest plaintiff's building, and that more than one engine was sometimes required for running the train, was no evidence of any negligence on the part of the defendant. The court declined and defendant excepted.

We think the defendant was entitled to that charge. A good deal of stress was laid on the fact that heavy freight trains were run on this track; that more than one engine was sometimes needed; that at times trains were "stalled," that is, could not move. It was, therefore, important that the charge thus requested, if correct, should have been made.

It cannot be negligence, as to adjacent owners, that the defendant should run long and heavy trains. How long and how heavy a

train should be must be a matter for the railroad to decide. And the mere fact that trains were long and heavy and needed two engines could be no evidence of negligence.

The court had charged that if defendant " wantonly overloaded their trains and you (the jury) believe it was an imprudent manner of using trains over land and their own property by overloading the trains, perhaps they would be liable." This was excepted to by defendant.

We do not see any evidence that there was a wanton overloading. If it was meant that willfully, and in order to injure plaintiff, the defendant had overloaded its trains, possibly defendant might be liable for such a wrongful act. But nothing of that kind is shown. The utmost that is shown is simply that sometimes the trains were heavy and became " stalled " at this place and needed more than one engine.

It does not appear that there was any carelessness in making up trains, or that the person who attended to that business was incompetent or anything other than the mere fact that trains were sometimes heavy and were sometimes " stalled " on this steep grade. It was not correct to permit the jury to predicate negligence on this fact alone.

It is a common observation that rails may at times be slippery so that it is difficult for engines to move. Some one must judge as to the proper number of cars to be placed in a train, and if unforeseen causes should show the train to be too long, there would not necessarily be evidence of negligence in respect to the adjacent owners of land.

Whether there was any ground for recovery on account of imperfect spark-arresters we need not discuss. The jury were permitted to find negligence from other circumstances than the alleged defect in the spark-arresters and from circumstances which, as we think, could not legitimately show any negligence whatever.

The judgment and order should be reversed and new trial granted, costs to abide the event.

LANDON, J., concurred ; MAYHAM, J., not acting.

Judgment and order reversed, new trial granted, costs to abide event.