---

### NEW YORK CENT. & H. R. R. CO. v. UNTERMYER et ux.

(Supreme Court, Appellate Division, Second Department. June 4, 1909.)

1. EMINENT DOMAIN (§ 186*) — RAILROADS — PROCEEDINGS—STATUTORY PROVISIONS—NECESSITY OF MAP OF ROUTE.

   Railroad Law (Laws 1890, p. 1084, c. 565) § 6, relating to the condemnation of land by railroads, and requiring the filing of a map and profile of the route adopted, does not apply to the condemnation of land to construct a new section of main line track by a trunk line railroad for the purpose of more safely and conveniently handling its traffic.

   [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 500–504; Dec. Dig. § 186.*]

2. EMINENT DOMAIN (§ 20*) — RAILROADS — DEPOT PURPOSES—CHARTER PROVISIONS.

   Laws 1869, p. 2399, c. 917, §§ 3, 4, under which plaintiff railroad company was organized by the consolidation of the N. & H. Railroad Companies, provide that the consolidation shall not release the new corporation from any of the restrictions or duties of the several corporations. Laws 1846, p. 272, c. 216, creating the H. Company, authorized it to construct a single, double, or treble track road between New York and Albany, and section 1 further authorized it to construct the branches for depot and station

accommodations needed for its business. Plaintiff seeks to condemn land for 35 miles of track from its general depot in New York City for an "additional main track," and to afford a more expeditious means of handling traffic. *Held*, that the charter contemplated such tracks as would accommodate the depot conditions for a treble track railroad, and the purposes of the desired track in question came within the spirit of the additional charter power to construct branches for station accommodations needed for railroad business, though it already had treble tracks over the same distance.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 20.*]

3. EMINENT DOMAIN (§ 138*)—RAILROADS—COMPENSATION—AMOUNT.
Where a railroad company took a strip of 7½ feet in fee for a right of way, and also an adjacent strip which was partly under water, for the purpose of raising it to the level of its tracks and sloping the land to the water so as to afford lateral support to its right of way, leaving it otherwise free for use by the owner, he was not entitled to as much compensation for such adjacent land as for that taken in fee.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 138.*]

4. EMINENT DOMAIN (§ 262*) — PROCEEDINGS — APPEAL — CONCLUSIVENESS OF FINDINGS.
Where the commissioners in condemnation proceedings are not shown to have adopted a wrong theory in awarding compensation, and have viewed the property at the hearing, their determination as to the amount of compensation will not be disturbed on appeal.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 681–686; Dec. Dig. § 262.*]

5. EMINENT DOMAIN (§ 96*)—COMPENSATION—AMOUNT—CONSEQUENTIAL DAMAGES.
The owner of land is entitled to full compensation for land taken for a railroad right of way and to consequential damages resulting from taking the property from his estate.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 245–249; Dec. Dig. § 96.*]

6. RAILROADS (§ 115*)—OPERATION—OPERATION BY ELECTRICITY.
Under the charter of the H. Railroad (Laws 1846, p. 272, c. 216, § 1), authorizing it to transport property and persons by steam or any mechanical or other power, it may equip its tracks with electricity, and construct an electric railroad over land taken for a right of way.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 115.*]

Appeal from Special Term, Westchester County.

Condemnation proceedings by the New York Central & Hudson River Railroad Company against Samuel Untermyer and wife. From an interlocutory order appointing commissioners of appraisal, and from a final order confirming their report, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, JENKS, and MILLER, JJ.

Louis Marshall, for appellants.

John F. Brennan, for respondent.

WOODWARD, J. The plaintiff in its petition for the condemnation of lands of the defendants near the city of Yonkers avers that the "public use for which said property is required is for an additional main track of the plaintiff's railroad, for its accommodation, and to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

afford safer and more expeditious and convenient handling of trains and traffic, which have increased in number and volume, so that the handling thereof on the existing tracks of the plaintiff is difficult and dangerous. It is intended by the plaintiff herein to construct an additional main track from New York City as far north as Croton, and to operate its trains between its Grand Central Station in New York City and Croton, on the Hudson division, by electrical power, and the lands and the rights and easements in lands hereinbefore described and sought to be acquired in this proceeding are required for the purpose of running and operating the railroad of said plaintiff in a safe and proper manner." The petition seeks to condemn a parcel of 10,867 square feet of land, partially under the waters of the Hudson river, together with the "right and easement to fill in, from time to time, with earth and other solid material, a strip of land under water, of the uniform width of 12½ feet, westerly of the premises above described, the westerly boundary line thereof being parallel to the westerly boundary line of the premises above described, such filling at the easterly boundary line of said strip of land to be level at all points with the roadbed of the party of the second part, adjacent thereto, and gradually to slope to the westerly boundary line of said strip of land under water; the northerly and southerly boundary lines of the said strip of land being the northerly and southerly boundary lines, respectively, extended westerly of the premises first above described. Such filling is necessary for the support of the roadbed and railroad track to be constructed by plaintiff upon the premises first above described."

The defendants appeal from the interlocutory order and judgment condemning the lands and appointing commissioners of appraisal, and from the order confirming the report of such commissioners; and it is urged that the interlocutory judgment was unwarranted because of the failure of the plaintiff to comply with the preliminary steps required by law to be taken in order to entitle it to institute these proceedings. It is the contention of the defendants that section 6 of the railroad law (Laws 1890, p. 1084, c. 565) requires the filing of a map and profile of the route adopted before it is entitled to institute condemnation proceedings. A reading of the section referred to, it would seem to us, is sufficient to indicate that it was not designed to govern in a case of this kind, where a railroad corporation, charged with the duty of handling the traffic of a great system, is forced to construct a new section of main line track for the purpose of safely and conveniently discharging this duty, and this seems to have been the conclusion reached by this court in New York Central & Hudson River R. R. Co. v. Ernst, 114 App. Div. 874, 100 N. Y. Supp. 175.

It is also urged by the defendants that the plaintiff, having been created under the provisions of chapter 917, p. 2399, Laws 1869, under the terms of which the New York Central Railroad Company and the Hudson River Railroad Company were consolidated into a single body corporate, is bound by the limitations of the Hudson River Railroad Company created under a special act (chapter 216, p. 272, Laws 1846), and which provided, among other things, that it should have "power to construct a single, double or treble railroad or way, between

the cities of New York and Albany"; various sections of the act reciting the same language. The contention is that the act under which the plaintiff was created having provided in sections 3 and 4 that upon "the making and perfecting such agreement and act of consolidation as hereinbefore provided  *  *  *  shall be deemed and taken to be one corporation by the name provided in said agreement and act, but such act of consolidation shall not release such new corporation from any of the restrictions, disabilities or duties of the several corporations," and that "all and singular the rights, privileges, exemptions and franchises of each of said corporations,  *  *  * shall be taken and deemed to be transferred to and vested in such new corporation," and the plaintiff having already constructed and operated a treble railroad, its powers under the charter of the Hudson River Railroad Company have been exhausted. Assuming that the plaintiff is restricted by the act in question, and that it has exhausted the right "to construct a single, double or treble railroad or way, between the cities of New York and Albany," the powers granted by the statute did not end there. The act expressly provides (chapter 216, p. 272, Laws 1846, § 1) that, in addition to the general power above stated, the corporation shall have power to "construct such branch or branches, for depot and station accommodations, as may be required for the business of said railroad"; and the petition in the present proceeding states that "the public use for which said property is required is for an additional main track of the plaintiff's railroad, for its accommodation and to afford safer and more expeditious and convenient handling of trains and traffic, which have increased in number and volume, so that the handling thereof on the existing tracks of the plaintiff is difficult and dangerous," and that the lands required are "for the purpose of running and operating the railroad of said plaintiff in a safe and proper manner." The proposition is to construct this track from the Grand Central Station to Croton, a distance of about 35 miles, and while the petition does not call this a branch, but refers to it as "additional main track," this language has a meaning in railroad engineering somewhat different from the popular understanding, sidings, switches, etc., being constructed generally of lighter, and often of rails which have served a time on main tracks and have then been utilized for secondary purposes. The petition clearly indicates that this new main track is for the purpose of taking care of the traffic going in and out of the Grand Central Station, and it comes within the spirit of the additional power to "construct such branch or branches for depot and station accommodations as may be required for the business of said railroad." It is not a power to construct branch lines leading off into various localities, but to accommodate the depot and station conditions of the railroad, and this clearly contemplates such tracks as shall be found necessary in the practical operations of a treble railroad. An additional track to care for the local business of the Grand Central Station running out 35 miles is not an abuse of the power conferred. It is such a branch as the statute fairly authorizes. It is probably true that a lateral or branch railroad usually contemplates one running from some point on the

main line, intended as a connecting line or feeder, to quote the American & English Encyclopedia of Law (volume 18, p. 561), but in the present case the statute itself defines the branch or branches to be constructed, and these are "for depot and station accommodations, as may be required for the business of said railroad," and clearly contemplated tracks which should serve to take care of the business of the railroad within a reasonable distance of any station, and this is what appears to be contemplated in the present proceeding. It is in harmony with the provisions of chapter 727, p. 2055, Laws 1905, which specially provides for taking lands under the conditions here under consideration.

It is urged, however, that the commissioners erred, even assuming them to have authority to act, in adopting two standards of valuation —one for the land taken in fee, and another for that as to which only an easement was required. The commissioners awarded 30 cents per square foot for the lands taken in fee, and 12 cents per square foot for the easement. The contention is that the defendants are entitled to the "fair market value of the lands" taken, and that this right applies, not only to the land taken in fee, but to that as to which the easement only is sought. It is true that the plaintiff is seeking permanent rights as to both properties, but it is not true that the rights sought to be acquired are the same. The lands as to which the easement is required are under water. The plaintiff asks for it merely the right to fill in this water front in such a way as to bring that portion of it along its tracks to the general level of such tracks, and then to slope down to the water for the purpose of affording lateral support to the lands which it seeks to take in fee. The railroad does not ask to use the land for any other purpose than support. The owners can build upon the same, or make any use of it which does not interfere with the lateral support of the railroad tracks, and such a taking is very different from a taking for railroad purposes generally. It is a railroad purpose, but it is a limited railroad purpose, leaving the most of the rights of the owners as free from interference as though the taking was confined to the strip of 7½ feet in width which is taken in fee. To say that there is no difference between these cases is to ignore the practical and everyday knowledge of affairs, and to permit mere assertion to take the place of reason. The cases of City of Syracuse v. Stacey, 86 Hun, 441, 33 N. Y. Supp. 929; Roby v. N. Y. C. & H. R. R. R. Co., 142 N. Y. 176, 36 N. E. 1053; Miner v. N. Y. C. & H. R. R. R. Co., 123 N. Y. 242, 25 N. E. 339; and Hudson & Manhattan R. R. Co. v. Wendel, 193 N. Y. 178–179, 85 N. E. 1020—do not state any doctrine of this kind. They merely hold the general rules so well understood in condemnation proceedings that the statutes must be strictly complied with, and that just compensation shall be made, and the rule is well established that where the commissioners are not shown to have adopted a wrong theory, and where they have, in connection with the hearings, visited the property and viewed the same, their determinations are not to be disturbed by the court on appeal. There is no doubt whatever that the defendants are entitled to have full compensation for the land actually taken, to the extent that it is

taken, and that they are entitled to those consequential damages which result from the taking of the property out of the estate owned by them, but the record discloses that the commissioners have made awards for these elements of value; that they have viewed the premises, as conceded by appellants' counsel at page 42 of his brief, and have taken evidence upon all the points offered for consideration. Under what rule of law, then, are we to hold that the defendants have not been awarded that just compensation which the Constitution and the law provides shall be made?

It is suggested that the plaintiff by using an electrical equipment is greatly increasing the danger of crossing the tracks which it is proposed to construct, and that this constitutes a practical cutting off from the river front all of the premises of the defendants not taken. It should be remembered, however, that the plaintiff is now maintaining a treble-track railroad, cutting the defendants off from the river front; that the river front, between the railroad and the river, is largely under water; and that the plaintiff has a right, under its charter (chapter 216, p. 272, Laws 1846, § 1), to "transport, take or carry any property and persons upon the same, by the power and force of steam, of animals, or of any mechanical or other power, or of any combination of them," so that it might, if it chose, equip its present tracks with electricity, and this right was acquired with its right of way through the defendants' premises. Having this right as to the tracks now in use, it must be clear that the damages could not be greatly increased by the additional track proposed to be constructed; and the witnesses testifying to values laid great stress upon the fact that the proposed electrification of this branch line increased the danger and operated to cut off the defendants from the river front. The witnesses called by the defendants to testify as to values varied in their estimates from 45 to 75 cents per square foot for the property taken in fee, while the plaintiff's witnesses placed the value as low as 15 cents per square foot, and the commissioners, viewing the premises, placed the figure at 30 cents per square foot, and like variations occurred in the matter of the easement, and the consequential damages, and these the commissioners have fixed. No errors are urged in regard to the evidence submitted. No exceptions are brought forward, and the only ground for reversal aside from the legal questions already considered is the alleged inadequacy of the awards. But no rule is suggested by which the determination of the commissioners who viewed the premises can be overturned, and, while we might think that the awards were not as large as might properly have been awarded under the special circumstances, we find no ground for this court to interfere.

The order and judgment appealed from should be affirmed, with costs. All concur.