people "could use the other bedroom." The superintendent admitted that he found the walls "damp and cold" upon one occasion. I think that the testimony established the defense of constructive eviction, and that judgment for the rent for the month of December, 1913, only should have been given for the plaintiff, less said sum paid by defendant.

Judgment modified by reducing the amount of the recovery to the sum of $66.68, and appropriate costs in the court below and as modified affirmed, with costs to the appellant to be offset against the judgment. All concur.

---

### WEISMAN v. WOLINSKY.

(Supreme Court, Appellate Term, First Department.    May 14, 1914.)

APPEAL AND ERROR (§ 1151*)—DETERMINATION—MODIFICATION.

Where plaintiff conceded defendant's counterclaim and was willing to have it deducted on appeal, a judgment which did not dispose of the counterclaim should be modified by a deduction of the amount of the counterclaim and, as modified, affirmed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4498-4506; Dec. Dig. § 1151.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Harry Weisman against William Wolinsky. From judgment for plaintiff, defendant appeals. Modified and affirmed.

Argued May term, 1914, before GUY, BIJUR, and PENDLETON, JJ.

Samuel Bitterman, of New York City, for appellant.
Abraham Greenberg, of New York City, for respondent.

BIJUR, J.  Plaintiff sues to recover $161.70, balance due for money loaned. The answer, after various denials and defenses, sets up a counterclaim for $30 for rent, which was admitted. After the trial the court gave judgment for plaintiff without apparently passing upon the counterclaim. As it was conceded, however, that this $30 was due, and the plaintiff is willing to have it deducted, the judgment is modified by reducing the same by $30 and appropriate costs in the court below and, as so modified, affirmed, with $10 costs to respondent. All concur.

---

(84 Misc. Rep. 606)

### HEARST v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Special Term, New York County.    March, 1914.)

1. RAILROADS (§ 222*)—CLASSIFICATION AND SWITCHYARD—RIGHT TO LOCATE.

Unless restricted by statute, a railroad company may locate at any point on its property such a classification and switchyard as it deems advisable, having due consideration for its patrons, providing the lawful rights of others are not thereby interfered with.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720-724; Dec. Dig. § 222.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. RAILROADS (§ 222*)—CLASSIFICATION AND SWITCHYARD—INJUNCTION.

The owner of a modern 12-story apartment house, in a part of New York City long settled and populated as a high-class residential district, and in which he resides, may enjoin a railroad company from using its tracks in front of his premises as a switch, classification and storage yard or terminal, and from burning soft coal on its locomotives in the vicinity of his premises.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

3. RAILROADS (§ 222*)—SWITCHYARD—INJUNCTION.

Where, in an action by the owner of a high-class apartment house, in which he resides, to enjoin a railroad company from maintaining a switchyard in the vicinity of his premises, it is not shown that discontinuance of the yard at that place would occasion inconvenience for which adequate remedy could not be provided, the injunction will not be denied on the ground that it will interfere with the service being rendered by defendant to the public.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

Injunction by William Randolph Hearst against the New York Central & Hudson River Railroad Company. Judgment for plaintiff.

Clarence J. Shearn, of New York City, for plaintiff.

Alexander S. Lyman, of New York City (Robert A. Kutschback and George H. Walker, both of New York City, of counsel), for defendant.

PHILBIN, J. This is an action by the owner of a piece of property on the southerly corner of Riverside Drive and Eighty-Sixth street, in the borough of Manhattan, upon which there is erected a modern 12-story apartment house of the highest grade, to restrain the defendant from using its tracks between Seventy-Second and Ninetieth streets as a switch, classification, storage yard, or terminal, and committing other acts, all of which are alleged to constitute a nuisance. The plaintiff is in actual possession of said premises and resides thereon. The plaintiff alleges that the defendant operates along its right of way between Seventy-Second and Ninety-Sixth streets a four-track railroad; that the main use made by defendant of said tracks is as a railroad terminal, switchyard, and place for the storage of freight cars; that it stops all of its south-bound freight trains with their heads at Seventy-Ninth street and the rear cars extending above Eighty-Sixth street, and then breaks up or classifies the cars in said trains according to their several destinations; that this operation consists of hundreds of movements of the switching engine back and forth, and creates loud noises due to the puffing of locomotives, the escape of steam, the slipping of wheels, the ringing of bells, the shouting of orders, and the crashing together of cars; that many of the cars are left standing on the tracks for hours at a time; that many of the cars are loaded with live stock and emit a sickening stench; that the live stock make loud and disagreeable cries and noises; that the defendant draws its north-bound freight trains to a point north of Seventy-Second street by its switch engines; that the said trains stand there while a road locomotive is attached and the train inspected, during which the road locomotive,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

standing idle, discharges steam which can be heard for blocks around; that, when finally started north, it makes a terrific noise from the slipping of wheels and the puffing incident to starting in motion a loaded train; that all of said operations are accompanied by the emission from the locomotives of large quantities of black smoke and noxious gases, which, when the wind is from the west, are carried to plaintiff's said apartment house, and, unless all the windows along the westerly side thereof are kept closed, enter and permeate the apartments, as do also the foul odors from said standing trains of live stock; that the furnishings and fittings of said apartment house are thereby soiled and destroyed; that the rest and quiet of the tenants and inmates are disturbed by the aforesaid noises, preventing their sleep and injuriously· affecting their health; that a nuisance is created and unlawful injury is done and continues to be done to plaintiff's said property. Plaintiff further alleges that the injuries complained of are not the natural or unavoidable result of the operation of defendant's railroad, but are due to the use of defendant's right of way between Seventy-Second and Ninetieth streets as a switching, classification, storage yard, and terminal, which is an unnecessary, unreasonable, and unlawful act; that the defendant is grossly negligent in the operation of its railroad between said points, in that it permits the burning of soft coal in its locomotives, and unnecessary ringing of bells, conducts its switching operations with unnecessary noise and disturbance in permitting cars containing live stock to stand in the aforesaid region, and in operating its road by steam instead of electricity; that the negligent operation of its road constitutes a nuisance; that plaintiff's property has been and is constantly being depreciated in value; that the injury is a continuing one; and that the plaintiff has no adequate remedy at law. Wherefore plaintiff asks that all of the aforesaid alleged unlawful acts be enjoined. The answer is a denial of most of the allegations in the complaint.

For separate defenses the defendant alleges: (1) Its incorporation and authority from the Legislature to operate its railroad, and that its operation is pursuant to such authority; that the operation of its trains and engines is necessarily attended with noise and with the emission of smoke, steam, or vapor and dust; (2) that its right of way opposite the plaintiff's premises was acquired by it or its predecessor by condemnation proceedings from one John H. Howland, the owner of a large tract of land, including the premises now owned by the plaintiff, and that by said proceedings the defendant's predecessor acquired full right and title to use the land so taken generally for railroad purposes; (3) the use and possession of the premises for the operation of its trains and engines, with the attendant noise, smoke, steam, and dust, for more than 20 years past, and that if the extent of the noise, smoke, steam, and dust has increased, it is due largely to the increase in the number of its trains and engines necessary for the proper operation and management of its railroad; (4) that the alleged cause of action set forth in the complaint did not accrue to the plaintiff or his predecessors in title within 20 years next preceding the commencement of this action; (5) that by its open and notorious use of its premises for more than 20 years past, and the acquiescence of the plaintiff and his

predecessors, the defendant has acquired a prescriptive right to such use of said premises; (6) that the plaintiff has an adequate remedy at law. The defendant's right of way continues along the river front from Seventy-Second street north, and consists of four tracks. South of Seventy-Second street and extending to Sixtieth street the defendant maintains a freightyard and terminal; thence, southward, the right of way runs along Eleventh avenue and connects with two yards or terminals, situated respectively at Thirtieth street and St. John's Park.

[1] The right of the defendant to operate its railroad as a through carrier of freight and passengers for hire and to use its sidings whenever necessary to permit the passage of other through north and south bound trains or other emergency connected with the through passage of trains is conceded by the plaintiff, and is in any event well settled by two recent decisions. N. Y. C. & H. R. R. R. Co. v. City of New York, 202 N. Y. 212, 95 N. E. 638; Willson v. N. Y. C. & H. R. R. R. Co. (Sup.) 146 N. Y. Supp. 208. In his complaint the plaintiff also asked that the defendant be enjoined from using or operating its trains on more than two tracks. Plaintiff's counsel did not, however, urge this point either on the trial or in his brief, but had he done so the authorities are clear that the defendant may construct and use upon its right of way any number of tracks that it finds necessary to take care of its business, and that adjoining property owners cannot complain because the greater number of trains increases the incidental inconvenience which they suffer, due to the operation of the railroad. New York C. & H. R. R. R. Co. v. Untermyer, 133 App. Div. 146, 117 N. Y. Supp. 443, affirmed, without opinion, 196 N. Y. 531, 89 N. E. 1106; Flinn v. N. Y. C. & H. R. R. R. Co., 58 Hun, 230, 12 N. Y. Supp. 341; Colgate v. N. Y. C. & H. R. R. R. Co., 51 Misc. Rep. 503, 100 N. Y. Supp. 650; Long Island R. R. Co. v. Sherwood, 205 N. Y. 1, 98 N. E. 169. The charter of the Hudson River Railroad Company, to the rights of which the defendant has succeeded (Laws of 1846, c. 216), provided that the railroad should have power to construct "a single, double or treble railroad or way," and "with power to construct such branch or branches, for depot or station accommodations, as may be required for the business of said railroad." It is well settled that a corporation has by implication power to do those things necessary or convenient to its authorized business, unless expressly prohibited by law. That it is necessary to the business of a railroad corporation to establish switch and classification yards is too clear to require argument. It is one of those acts which are necessary to the proper operation of the railroad. It, therefore, follows that unless restricted by some express provision of law, the directors of the company have the incidental power to locate such a classification and switch yard at any point upon the railroad's property where in their discretion it is advisable, having due consideration for the convenience of the company's patrons, provided, however, they do not thereby interfere with the lawful rights of others. That such discretion exists in the board of directors was distinctly held in the case of Matter of New York & H. R. Co. v. Kip, 46 N. Y. 546, 7 Am. Rep. 385.

[2] The plaintiff's contention is that, although the defendant has the right to operate its trains in ordinary passage along its right of way in front of his premises, it has not the right to use its tracks at that point and in the immediate vicinity thereof as a switch and classification yard, and that such use from its nature necessarily constitutes a nuisance. That the defendant does so use its right of way in front of plaintiff's premises is practically conceded by it, and is well established by the proof. The plaintiff, in order to succeed in this action, must establish that such use constitutes a nuisance, and therefore is unlawful. I think the material facts detailed in the complaint have been sufficiently established. The use of the premises at night, as well as during the day, as a switch and classification yard involved the classifying of cars in accordance with their several destinations, the making up of outgoing trains, and the holding of cars, some of which contained live stock, on sidings. These operations, as to the moving of cars, were necessarily accompanied by loud and disagreeable noises from the crashing together of the cars, and from the locomotives, including the discharge of steam and the slipping of the wheels when heavily loaded trains were being started after having been made up. From the cars on said sidings containing live stock there were often emitted a sickening stench and the sounds of bleating and lowing cattle. These sounds and smells penetrated the plaintiff's apartment house, disturbing the rest and quiet of the inmates, and corrupting the atmosphere with offensive odors, rendering living therein intolerable, and greatly tending to reduce the availability of the premises for residential purposes. The defendant's witnesses did not deny said acts, so far as they related to the movement of trains, but claimed that they were necessary to the use of said section of its road as it was then being used, and admitted that said use was increasing. It must therefore be assumed that, not only will the injuries now complained of continue, but that they will be repeated to a greater extent. Clearly the acts above set forth seriously annoyed and disturbed the plaintiff in the possession and enjoyment of his property, rendering its use as a dwelling undesirable. It follows that the defendant must be held responsible for an unlawful continuing invasion of the plaintiff's rights, and the latter is entitled to the intervention of this court to restrain the defendant from persisting in the use of its tracks in the manner above described. The right of the plaintiff not to be disturbed in the use of his property is well defined by Vann, J., in McCarty v. Natural Carbonic Gas Co., 189 N. Y. 40, 81 N. E. 549, 13 L. R. A. (N. S.) 465, 12 Ann. Cas. 840:

"The ancient maxim of 'Sic utere tuo ut alienum non lædas' is the foundation of the well-established rule that no one may make an unreasonable use of his own premises to the material injury of his neighbor's premises; and, if he does, the latter has a right of action, even if he is not driven from his dwelling, provided the enjoyment of life and property is materially lessened."

In Baltimore & Potomac R. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739, it was held that establishing an engine house contiguous to a church owned by the plaintiff, so that smoke, cinders, and dust from the former penetrated the church win-

dows and the noise interrupted the services, constituted a nuisance. In Cogswell v. New York, N. H. & H. R. R. Co., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701, establishing an engine house next to the dwelling house of the plaintiff was likewise held to constitute a nuisance. In both of these cases it was urged on behalf of the defendants that, since they had been granted the right from the Legislature to operate railroads, and since the establishment of engine houses was necessary for their operation, the plaintiffs had no cause of action for the damage thereby caused. It was held that, however necessary it might be for the defendants to establish engine houses, it constituted no justification for the injury caused the said plaintiffs, but that the defendants must secure such a locality as would enable them to conduct their operations without violating the just rights of others. As was said by Mr. Justice Field in the Baltimore & Potomac Case, supra, 108 U. S., page 331, 2 Sup. Ct., page 727, 27 L. Ed. 739:

"As well might it be contended that the act permitted it to place them [engine house and repair shop] immediately in front of the President's house or of the Capitol, or in the most densely populated locality."

The Cogswell Case was followed in Garvey v. Long Island R. R. Co., 159 N. Y. 323, 54 N. E. 57, 70 Am. St. Rep. 550, where it was held that the location of a turntable upon the railroad's property, but adjoining the plaintiff's dwelling house, constituted a nuisance. The degree of the proximity of the cause of the nuisance becomes immaterial if the detriment is clearly established. Therefore, while apparently the plaintiff's property was more remote from the source of the annoyance than that of the plaintiffs in the above cases, that fact becomes immaterial because of the proof of the actual injury caused to the plaintiff here by the defendant's acts. The part of its railroad appropriated in recent years by the defendant to the use complained of by the plaintiff is situated in a section of the city that it admits has long been populated and settled as a high-class residential section. The purpose to which the defendant applied the said section of its road cannot be regarded as a permissible use of its property according to the principles laid down. Booth v. Rome, W. & T. R. R. Co., 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552. Upon all the facts before the court it must be concluded that the acts of the defendant complained of were not a reasonable exercise of the dominion which it had over its property by virtue of its ownership, having regard to the interests of its neighbors as well as its own.

[3] Nor can the defendant invoke the theory of public policy on the ground that the granting of the relief sought would involve a serious interference with the important service being rendered by it to the public. It has not been established that the discontinuance of the section of the right of way in question as a yard would occasion more than an inconvenience for which some sufficiently adequate remedy could not be provided by the defendant. Even if the defendant here did have the right to use the locality in question as a switchyard, nevertheless for it to burn soft coal or to allow cattle cars to stand in front of the plaintiff's premises, as described by the witnesses, would constitute a nuisance. Willson v. N. Y. C. & H. R. R. R. Co.,

supra. The other defenses urged by the defendant relating to the statute of limitations, the alleged prescriptive right, and a common source of title have already been passed upon adversely to the defendant by this court in the Willson Case, supra, which involved, so far as those defenses are concerned, practically the same facts. The plaintiff is therefore entitled to judgment permanently enjoining the defendant from using its tracks in front of plaintiff's premises as a switch, classification and storage yard or terminal, and from burning soft coal on its locomotives in front of or in the vicinity of plaintiff's premises. Submit proposed findings.

Judgment accordingly.