judgment is not a bar to the maintenance of this action. The interlocutory judgment is also modified by striking therefrom all after the words "ordered, adjudged, and decreed," and inserting in place thereof a provision that the judgment recovered in the Illinois action is not binding upon this plaintiff, and is not a bar to the prosecution of this action.

The judgment appealed from, therefore, is modified as stated, and, as thus modified, affirmed, with costs to respondent. All concur.

---

(89 Misc. Rep. 489)

### DAVIS et al. v. INTERNATIONAL RY. CO.

(Supreme Court, Equity Term, Erie County. March 11, 1915.)

1. STREET RAILROADS ⬥⟿44—RIGHTS OF ABUTTING OWNER—ANNOYANCE BY OPERATION.

   Abutting property owners are without remedy for annoyance caused by the operation of a street railway upon tracks lawfully laid within the street.

   [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 93–95; Dec. Dig. ⬥⟿44.]

2. STREET RAILROADS ⬥⟿44—RIGHTS OF ABUTTING OWNERS—USE OF PRIVATE PROPERTY—NUISANCE.

   A street railroad company cannot operate a Y on its private property adjoining an apartment house in such a way as to be a private nuisance against the residents of the apartment, since the public character of its business does not entitle it to maintain a nuisance.

   [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 93–95; Dec. Dig. ⬥⟿44.]

3. STREET RAILROADS ⬥⟿44—"PRIVATE NUISANCE"—OPERATION OF STREET RAILROAD.

   Where a street railroad operated a Y upon its own lot adjoining plaintiff's apartment house in such a manner that a noise, occasioned by the cars in running over the frogs and switches and by the car crews during switching operations, disturbed the sleep of plaintiff and his tenants, such use of its premises was a "private nuisance"; it not being necessary to constitute a private nuisance that the neighbor be driven from his premises, if his enjoyment of life and property was rendered uncomfortable.

   [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 93–95; Dec. Dig. ⬥⟿44.

   For other definitions, see Words and Phrases, First and Second Series, Private Nuisance.]

4. STREET RAILROADS ⬥⟿44—PRIVATE NUISANCE—INJUNCTION—DAMAGES.

   In a suit to restrain the operation of a Y by a street railroad company as a private nuisance, where the operation of the Y was necessary to the business of the company and the damages thereby occasioned to plaintiff's property were shown, the court can determine the amount of damages and render a judgment that the defendant either pay that amount to plaintiff or be restrained from continuing the nuisance.

   [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 93–95; Dec. Dig. ⬥⟿44.]

Action by Earl J. Davis and another against the International Railway Company to restrain an alleged nuisance. Judgment entered

---

⬥⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

granting a permanent injunction, unless the defendant shall pay a certain sum as damages to plaintiffs.

Willard H. Ticknor, of Buffalo, for plaintiffs.
James O. Moore, of Buffalo, for defendant.

WHEELER, J.  This is an action to restrain an alleged nuisance. The plaintiff is the owner of a house and lot fronting on Seneca street in the city of Buffalo.  The building consists of a two-family apartment house, arranged for a family on the first floor and one on the second floor.  One of these apartments was occupied and used by the plaintiffs; the other was let to tenants.  In addition, Earl J. Davis occupied a room in front for the purpose of a barber shop.  Alongside of the premises owned by the plaintiff was a vacant lot.  This lot was purchased by the defendant subsequent to the erection and occupation of the plaintiff's house.  It was acquired by the defendant for the purpose of installing and operating a Y upon it.  The defendant operates an electric street railway with double tracks along Seneca street in front of the plaintiff's property.  The company quite recently has adopted a type of car commonly known as the "near-side car."  In this style of car, passengers enter and alight at the forward end of the car.  It is so constructed that upon reaching the end of the line the car has to be reversed, or turned around, for the return trip.  This can be accomplished either by means of a turntable, or by the use of a Y, by which the car is switched from the main track upon the spur, and then runs back upon the main track.  The vacant lot was purchased for this purpose, and the defendant laid upon it the necessary tracks and switches.

The evidence shows that in operating its railroad the street car company runs many cars in and out upon this Y.  This has been done at all hours of the day and night; the day traffic being greater, of course, than the night.  Necessarily the movement of the cars over the tracks laid on this vacant lot, and over the switches and frogs connected with it, makes considerable noise.  The evidence shows that, in addition to the noise incident to the movement of the cars, there was more or less loud talking between the crews in charge of the cars; that the movement of the cars over the frogs and tracks laid on this lot caused serious vibration of the dwelling house, so much so that bric-a-brac and china in the house rattled and shook, and at times the door of the cook stove would be thrown open.

The tracks in question were beside and immediately under the windows of the plaintiff's dwelling house, and during the warm weather, when windows are usually kept open for air and ventilation, the noise and disturbance incident to the operation of the Y is particularly annoying, causing the occupants of the house to waken.  Their slumber was seriously broken.  The annoyance was so great that the plaintiff's tenant vacated his apartment on that account, although another tenant was later procured at a reduced rent.  Complaints of these things were made to the defendant by the plaintiffs, and the defendant's superintendent and foreman gave instructions to the car crews to avoid, so far as possible, making noises and disturbances on

the lot in question.  Nevertheless they have continued without substantial diminution.

I am satisfied that the officers and officials of the defendant have made honest efforts to minimize the noises and annoyance incident to the operation of the Y, but I am equally satisfied that in the very nature of things it is and will be impossible for the defendant to operate the Y without annoyance and disturbance to the occupants of the plaintiffs' dwelling.  The plaintiffs allege that the use of these tracks in the manner stated constitutes a nuisance, and seek to enjoin its continuance.  The defendant contends, in substance, that it is a public service corporation, that the use of the Y is necessary for the proper operation of its street railway, and so long as it made no more noise than necessarily incident to its operation its use cannot be legally enjoined, and the plaintiffs have no cause of action.

[1] The defendant has the undoubted right to lay its tracks and operate its railway in Seneca street.  So far as there is annoyance incident to such operation, abutting property owners are without remedy.  Hearst v. N. Y. C. & H. R. R. R. Co., 84 Misc. Rep. 610, 147 N. Y. Supp. 869 (citing N. Y. C. & H. R. R. R. Co. v. Untermyer, 133 App. Div. 146, 117 N. Y. Supp. 443, affirmed 196 N. Y. 531, 89 N. E. 1106; Flinn v. Same, 58 Hun, 230, 12 N. Y. Supp. 341; Colgate v. Same, 51 Misc. Rep. 503, 100 N. Y. Supp. 650; Long Island R. R. Co. v. Sherwood, 205 N. Y. 1, 98 N. E. 169).

[2] When we go beyond the right of way over and along the public streets, there exists a limitation on the right of a public service corporation, like the defendant, to maintain and operate yards, switches, turntables, and other structures in connection with its line or lines. Mr. Justice Field, in the case of Baltimore & P. R. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739, says:

"That the authority of the company to construct such works as it might deem necessary and expedient for the use and completion and maintenance of its road did not authorize it to place them  *  *  *  without reference to the property rights of others, and that whatever the extent of the authority conferred, it was accompanied with this implied qualification, that the works should not be so placed as by their use to unreasonably interfere with and destroy the peaceful and comfortable enjoyment of others in their property. Grants of privileges or powers to corporate bodies, like those in question, confer no license to use them in disregard of the private rights of others, and with immunity for their invasion."

In Garvey v. Long Island R. R. Co., 159 N. Y. 323, 54 N. E. 57, 70 Am. St. Rep. 550, the action was to restrain the use of a turntable adjacent to the plaintiff's property, and the court held that general statutory power to construct and operate a steam surface railroad does not authorize such an unreasonable construction and use of a turntable in a terminal yard, in the vicinity of an inhabited dwelling on adjoining private property, as to seriously and permanently injure the adjoining premises and impair their enjoyment without compensation, and if a turntable is so used as to have that effect such use constitutes a nuisance which may be enjoined.

It may be stated generally that the public character of defendant's business does not entitle it to maintain a nuisance.  Bly v. Edison Electric Illum. Co., 172 N. Y. 6, 64 N. E. 745, 58 L. R. A. 500; Bohan

v. Port Jervis Gaslight Co., 122 N. Y. 18, 25 N. E. 246, 9 L. R. A 711; Garvey v. L. I. R. R. Co., 159 N. Y. 323, 54 N. E. 57, 70 Am. St. Rep. 550; Morton v. Mayor, etc., of N. Y., 140 N. Y. 207, 35 N. E. 490, 22 L. R. A. 241; Cogswell v. N. Y., N. H. & H. R. R. Co., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701; Hearst v. N. Y. C. & H. R. R. R. Co., 84 Misc Rep. 606, 147 N. Y. Supp. 869. To recognize any other doctrine would be tantamount to upholding a partial appropriation of private property for public use, without making compensation therefor.

[3] It is not necessary that the neighbor be driven from his dwelling; it is enough that his enjoyment of life and property is rendered uncomfortable. Bohan v. P. J. G. L. Co., 122 N. Y. 18, 25 N. E. 246, 9 L. R. A. 711; Roscoe Lumber Co. v. Standard Silica Co., 62 App. Div. 421, 70 N. Y. Supp. 1130. I am of the opinion that the evidence in this case establishes the fact that the use of the lot adjoining the plaintiffs' premises in the manner described constitutes a nuisance. Having reached these conclusions, it remains to consider the relief the plaintiff is entitled to, and the form the judgment should take.

[4] We think this court is justified, under the circumstances, in awarding a money judgment in lieu of an injunction. The defendant is a defendant is a public service corporation engaged in the transportation of passengers. The acquisition and use of the lot adjoining the plaintiffs' premises, or of some other lot, is reasonably necessary for the successful operation of the defendant's lines. The question of the amount and extent of the damages to the plaintiff's premises was fully gone into upon the trial, and witnesses testified to the extent of the depreciation caused by the continued and permanent use of the lot adjoining. All the data for the finding on the amount of depreciation has been presented to the court. Under such circumstances, we think the court justified in making an alternative finding and decision, to the effect that a permanent injunction issue unless the defendant pay the plaintiff the amount of the damages sustained. This has been the practice followed in the numerous suits against the New York elevated railroads, where easements of abutting property owners were invaded by the construction and operation of an elevated road in front of the plaintiff's premises. Bohm v. Met. El. R. Co., 129 N. Y. 576, 29 N. E. 802, 14 L. R. A. 344; Am. Bank Note Co. v. New York El. R. Co., 129 N. Y. 252, 29 N. E. 302; Roberts v. Same, 128 N. Y. 455, 28 N. E. 486, 13 L. R. A. 499; Mitchell v. Met. El. R. Co., 132 N. Y. 552, 30 N. E. 385; Woolsey v. New York El. R. Co., 134 N. Y. 323, 30 N. E. 387, 31 N. E. 891.

It only remains for the court to fix the amount of such damages. We can only say that the testimony as to the extent of the depreciation in the value of the plaintiffs' premises greatly differs. Taking all things into consideration, and after weighing all the evidence, I have reached the conclusion that the sum of $1,500 will fully compensate the owners for any and all damages, past, present, and future, which the plaintiffs have sustained or will sustain by the use and operation of the Y on the lot adjoining these premises.

The plaintiffs are therefore entitled to a judgment granting a permanent injunction against the acts complained of, unless the defendant, within 10 days after the service of a copy of the judgment to be entered hereon, with notice of the entry thereof, pay to the plaintiffs said sum of $1,500, together with the costs of this action, to be taxed. If the defendant fails to pay said sum, as herein provided, then a judgment for the injunction relief asked may be entered, together with the sum of $150 damages sustained by said plaintiffs to the present time, besides the costs of this action.